William M. Fitzgerald, Esq.
LAW OFFICES OF WILLIAM M. FITZGERALD
2nd Fl. Macaranas Bldg., Garapan Beach Road
P.O. Box 500909
Saipan, MP 96950
Telephone:  (670) 234-7241
Fax:        (670) 234-7530
Email:      fitzgerald.law@gmail.com

Attorney for Plaintiff

E-FILED
CNMI SUPERIOR COURT
E-filed: May 17 2021 01:19PM
Clerk Review: May 17 2021 02:38PM
Filing ID: 66605159
Case Number: 21-0158-CV
Delia Barcinas

IN THE SUPERIOR COURT
FOR THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| MARI CHUNG CEPEDA, individually and as Personal Representative of Tae Hyang Bang, deceased,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>JEJU AIR CO., LTD.,<br><br>　　　　　　　　　　　Defendant. | CIVIL CASE NO. 21-<br><br><br><br><br>COMPLAINT AND DEMAND FOR JURY TRIAL |

## JURISDICTION

1.   This Complaint is filed and the Court has jurisdiction pursuant to the provisions of the Constitution and laws of the Commonwealth of the Northern Mariana Islands and the Judicial Reorganization Act of 1989.

## PARTIES

2.   Plaintiff Mari Chung Cepeda ("Mari") is a U.S. citizen and a resident of the Commonwealth of the Northern Mariana Islands ("CNMI"), the daughter and only child of Tae Hyang Bang ("Tae"), deceased, and the duly appointed personal representative of the decedent who is a citizen of Korea and for more than 30 years, a permanent resident of the United States, domiciled in Saipan, CNMI.

Exhibit A

3. Defendant Jeju Air Co., Ltd. ("Jeju") is a corporation organized under the laws of Korea and doing business in Saipan, CNMI, as a common carrier and international commercial airline, providing air service to passengers between Saipan and Korea.

## FACTS

4. Decedent Tae was 62 years old at the time of her death and while suffering from a heart condition since birth had successfully led a full life. For the last 30 years, Tae has been a permanent resident of the United States, living in Saipan, and working in various clerical positions for Saipan companies and as a single mother raising her daughter Mari on her own.

5. In December 2020, decedent's heart condition took a turn for the worse and she experienced severe symptoms of congestive heart failure, low oxygen levels, bloating and weight gain.

6. Mari and her mother, after being informed by Saipan doctors that her condition was critical, and that she should immediately go to a place with sophisticated and advanced cardiac care decided in December 2020 that, because there was no resident cardiologist in Saipan and heart surgery and other cardiac procedures were unavailable in Saipan, Tae should go to Korea as soon as possible to consult with a cardiologist and undergo whatever procedures were necessary to correct her condition.

7. While in normal times, Jeju had daily flights to Korea, as a result of the COVID crisis, these flights were discontinued, but Jeju did offer to passengers a flight from Saipan to Korea on January 15, 2021. At all times mentioned herein, Jeju was the only carrier flying from Saipan to Korea.

8. Mari and Tae decided that Tae should take the January 15, 2021, Jeju flight to secure the necessary medical treatment in Korea.

9. On December 9, 2020, Mari attempted to book a seat on the January 15, 2021 Jeju flight, but was unsuccessful, and so on that same day, she contacted Jeju Saipan staff member, Ana Kim.

10. At this time, Mari informed Ana that her mother was in critical condition with a heart problem that could not be treated in Saipan and that she was desperate to get her mother to Korea as soon as possible, and she would need to have oxygen on the plane. Ana told Mari she would do her best to help her, but had to check with Jeju upper management.

11. On December 10, 2020, at Ana's request, Mari gave Ana a list of her mother's medications.

12. On the same day, Tae complained of swelling; edema on her ankles and legs was clearly visible and Mari, therefore, took Tae to the CHC Emergency Room, where Tae was seen by Dr. Jenna Kong.

13. Dr. Kong told Mari that Tae's condition was critical, and therefore, admitted her to the CHC ICU.

14. Dr. Kong told Mari that Tae urgently needed the consultation and treatment of a sophisticated cardiology center and that it was best if she went to such center as soon as possible and that Tae would be able to fly as long as she can travel with oxygen.

15. Mari reported this to Ana who told her that she had checked with Jeju management and they refused to allow Tae on the flight with an oxygen tank, so Mari began doing research and discovered that there was a portable oxygen concentrator ("POC") known as Inogen One that is approved and authorized for use on flights by the Federal Aviation Administration ("FAA").

16. At the time, there was no Inogen One available on Saipan, but Mari arranged with Marianas Medical Supplies to purchase an Inogen One pursuant to a prescription provided by Dr. Kong. Mari received the device on January 7, 2021.

17. On December 12, 2020, Mari telephoned Ana of Jeju and informed her that she had ordered a POC, the Inogen One, which was approved and authorized by the FAA.

18. Ana later told Mari that Jeju management absolutely refused to allow Tae on the plane with the Inogen One.

19. Further research by Mari, which she reported to Jeju, showed many airlines, including Asiana, United, Korean Air, and Jin Air, allowed POCs on their planes and had application forms for this purpose.

20. A screenshot of Asiana's website allowing the use of POCs and providing an application process was sent to Jeju by Mari.

21. Later that day, Mari received a message from Jeju's staff, Ana, that Jeju's decision was final and that her mother would not be allowed on their plane to Korea on January 15, 2021, with a POC.

22. On December 26, 2020, Tae had a consultation with a physician at CHC, who told Mari that Tae urgently needed specialized cardiac care, not available in Saipan and that Tae should seek specialized cardiac care as soon as possible.

23. On December 30, 2020, Mari filed a complaint against Jeju with the Department of Transportation and received a reply that stated:

> We will remind the carrier that as they are operating into a US Airport since the rule also applies to territories that they need to abide by the ACAA which requires them to accept FAA approved POCs.
>
> We will forward your complaint to the airline and will ask the company to respond directly to you. Airlines are required to provide a substantive response to the complainant within 60 days.

As of May 10, 2021, Jeju has not responded to Mari's complaint. Copies of the complaint and the Department of Transportation's response are attached hereto as Exhibits 1 and 2.

24. Through Tae's relatives in Korea, Mari was able to arrange an appointment for Tae to have a consultation at Asan Medical Center, a world class hospital specializing in cardiac care on January 28, 2021.

25. Asan Medical Center is the largest and most prestigious hospital in Korea, performing more complicated cardiac procedures, including heart/lung transplants than any other hospital in the country.

26. It is extremely difficult to secure an appointment at the Asan Medical Center and Tae was fortunate to secure the January 28, 2021 appointment.

27. Mari then again informed Jeju of the desperate condition her mother was in and how critical it was for her mother to get passage on the plane from Saipan to Korea, and that the POC she would use was approved by the FAA. Jeju callously cut her off and recklessly refused to accept her explanations and failed to conduct any investigation of its obligations under the Air Carrier Access Act ("ACAA"), and the FAA approval of the Inogen one POC.

28. Jeju's flight from Saipan to Korea took off from Saipan as scheduled on January 15, 2021, without Tae and arrived the same day.

29. If Tae had been able to be on that flight and get to Korea on January 15, 2021, she would have completed a 14-day quarantine and made the appointment at Asan Medical Center on January 28, 2021, and had the opportunity for its sophisticated heart diagnostic and treatment procedures.

30. As a result of Jeju's actions, Tae's appointment at Asan Medical Center was postponed to February 19, 2021.

31. Because Jeju refused Tae's passage on their January 15, 2021 flight to Korea, Mari sought an alternative route and was able to secure passage on United's flight to Guam, and after a

two-day layover, a Jin Air flight from Guam to Korea on February 3, 2021. Both airlines allowed Tae to board with the Inogen One POC.

32. Tae left Saipan on February 1, 2021 to Guam, accompanied by a friend, and was held at the Guam airport for five hours before being taken to a quarantine facility for a two-night stay before the flight to Korea on February 3, 2021. This arduous itinerary caused Tae increased debilitation.

33. If Jeju had not barred Tae from their flight, she would have arrived in Korea on January 15, 2021. The route that Tae was required to take, which included the five-hour detention at the Guam airport and the two-night stay in Guam was exhausting and caused her condition to deteriorate.

34. Once in Korea, Tae was required to undergo a 14-day quarantine, which she did at her friend's house.

35. Because there was no wi-fi at her friend's house, Mari talked to Tae by audio phone each day and would ask her about her condition, make sure she was eating and remind her to take her medicine.

36. On February 8, 2021, Mari received a phone call from Tae's friend, who told Mari that Tae's condition had taken a turn for the worse and she had become more debilitated and delusional.

37. After the phone call from Tae's friend, Mari made arrangements to conduct a Facetime call with Tae.

38. Mari was shocked by Tae's appearance on the Facetime call and realized that Tae's condition had severely deteriorated.

39. After seeing her mother on the Facetime call, Mari talked again to Tae's friend and told her to call an ambulance, which arrived but was unable to transport Tae to a hospital because no hospital had agreed to admit her.

40. The ambulance was standing by, but after a time, because they were unable to get a hospital to admit Tae, the ambulance left.

41. Beginning at approximately 6:00 p.m. Saipan time, on February 8, 2021, Mari searched the internet and called every hospital in Seoul that she could get a hold of, attempting to get her mother admitted to a hospital.

42. Finally, at about 3:00 a.m. Saipan time after countless phone calls to Korea, Han Yang University Medical Center (Hang Yang) agreed to accept Tae, but only in the emergency room. The ambulance returned and took Tae to Han Yang but she was only treated in the emergency room and spent a full week there without getting admitted to the main hospital.

43. After Tae arrived at the Han Yang ER, Mari was able to talk to a doctor who informed her that her mother's condition was very grave because of the weakened condition she had arrived in.

44. The hospital doctor told Mari that Tae was extremely debilitated and in critical condition with a massive buildup of fluid in her lungs, which they drained, but the length of time before receiving this treatment had caused Tae to become weak, debilitated and in more critical condition.

45. Over the next week, Tae was never able to get admitted to the main Han Yang hospital and had to stay in the ER alone, with no physical contact with family or friends, and where the care was sporadic and haphazard.

46. Mari had daily telephone conversations with Tae, and her mother complained about the lack of care and begged Mari to get her out of the hospital.

47. Mari had to call the ER nurse and request that they get water to her mother. Tae did not have a normal hospital bed, but was on an ER bed in a corner of the ER where she felt isolated and abandoned and got food and water only sporadically.

48. During all of this trouble, Mari tried to stay strong for her mother, talking to her every day by phone encouraging her to be strong, patient and not to give up while Tae made constant and pathetic pleas for her daughter to get her out of the place where she was not being adequately cared for.

49. The calls from her mother were heartbreaking and the inability to help alleviate her mother's pain and discomfort caused Mari severe pain, both physical and emotional including *inter alia* stomach pain, headaches, insomnia, anxiety and depression.

50. On February 15, 2021, after a week in Han Yang's emergency room where Tae was unable to get the specialized attention of a cardiologist, which she would have had at Asan Medical Center, Tae took a turn for the worse and her heart stopped twice, but was revived each time until an hour after her heart stopped the third time she passed away.

51. But for Jeju's violation of the law in refusing passage to Tae using a POC, Tae would have arrived in Korea on January 15, 2021, and would have had access to the specialized cardiac care at Asan Medical Center that would have saved her life.

## COUNT I

## WRONGFUL DEATH OF TAE BANG

52. Plaintiff repeats and realleges as if fully set forth, the allegations in ¶¶1-51.

53. Jeju, as a common carrier and by virtue of the fact that it operates into a U.S. airport, is required to comply with and abide by the ACAA a U.S. federal law.

8

54. The ACAA requires all airlines, such as Jeju, to allow access to its flights by passengers who, because of medical conditions, require oxygen supplied by POCs such as the Inogen One that Mari informed Jeju would be used by Tae.

55. Tae was a person with a disability seeking to take a POC on a flight from Saipan to Korea and as such, a member of that class of persons the ACAA was meant to protect and Jeju had a duty to provide passage to Tae using an approved POC.

56. Jeju, at various times in December 2020 and January 2021, violated its duty to comply with the ACAA by preventing Mari from buying a ticket and securing passage for Tae on their January 15, 2021 flight from Saipan to Korea because she needed to use a POC.

57. Because of Jeju's violation of the ACAA, Tae was unable to board Jeju's flight, which would have allowed her to arrive in Korea on January 15, 2021, and allowed her to make her January 28, 2021, appointment to be seen by the cardiologists at the Asan Medical Center.

58. Jeju's actions forced Tae to secure alternative passage, which she did on the first available flight to Korea, requiring travel from Saipan to Guam with a two-night layover, arriving in Korea on February 3, 2021, an unnecessarily arduous and debilitating journey.

59. In refusing to book Tae on their January 15, 2021 flight to Korea, Jeju violated the ACAA.

60. Jeju's violation of the statute directly and proximately caused the death of Tae by delaying treatment of her condition, at the Asan Medical Center which would have saved her life, thereby depriving her of the chance to live.

61. As a direct and proximate result of Jeju's refusal to fly Tae from Saipan to Korea on January 15, 2021, and Tae's resulting death, Mari, Tae's only child, has suffered pecuniary loss, which includes but is not limited to the loss of economic benefits and contributions Tae would have made to her if she had not died, as well as non-economic loss for grief and emotional distress.

62. Jeju knew or should have known of its legal obligations to provide passage from Saipan to Korea, to passengers requiring the use of FAA approved POCs, but outrageously, deliberately, and intentionally violated the law, acting recklessly and in willful and wanton disregard of Tae's wellbeing and is, therefore, liable for punitive damages.

## COUNT II

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

63. Plaintiff repeats and realleges as if fully set forth, the allegations in ¶¶1-62.

64. During December 2020 and January 2021, Mari repeatedly communicated with the employees of Jeju, desperately describing her mother's critical and deteriorating medical condition and the urgent need for her to fly to Korea on their January 15, 2021, flight.

65. On December 12, 2020, Mari took a screenshot of Asiana Airline's website showing approval of the use of POCs on their flights and sent it to Jeju's employee, Ana, asking her to check the rules regarding POCs, again, emphasizing that the device Tae would use was FAA approved.

66. Despite Mari's desperate pleas, and despite the fact that Jeju was violating federal law by refusing to allow Tae on their flight, Mari was informed that the decision to deny Tae passage on the January 15, 2021, flight came from Jeju headquarters in Korea and was final.

67. Mari called Jeju headquarters in Korea and explained to them that Inogen One had FAA approval and that other airlines provided for use of POCs on their flights.

68. Jeju cut her off abruptly, would not listen to Mari's explanations, and did no investigation to determine the accuracy of Mari's statements.

69. Jeju's cold, unreasonable and illegal response to Mari's desperate pleas was outrageous and showed a reckless, willful, and gross disregard for the rights of Mari and her mother since, simply by checking the FAA regulations, Jeju would have known that the device Tae would

use was safe, approved by the FAA, and that Jeju was required by law to allow her to use it on its flight.

70. The complaint that Mari made and the response from the U.S. Department of Transportation, as well as accessible information on the internet shows clearly that Jeju could have easily and with minimum effort discovered that it was required to permit Tae's use of the POC and its failure to do so was an outrageous, intentional, and willful failure to take into consideration the gravity of Tae's condition, their legal duty to allow her on the plane with her POC, and the inevitable severe emotional distress that not getting her mother to Korea would cause Mari.

71. The conduct of Jeju was willful, wanton, and under the circumstances, outrageous and its cavalier, reckless and grossly negligent approach to Tae's critical condition and the desperate pleas of her daughter Mari, foreseeably caused severe emotional distress to Mari, Jeju knowing that its unjustified refusal to allow use of the POC would have this effect on the daughter of the person they were illegally denying the opportunity to secure lifesaving medical care.

72. As a direct and proximate result of Jeju's outrageous conduct as described herein, Mari suffered physical pain and extreme mental anguish and distress, evidenced by abdominal pain headaches, insomnia anxiety and depression, and required treatment by a physician.

73. Because of the outrageous, reckless, willful, wanton and malicious nature of Jeju's conduct, Plaintiff is entitled to punitive damages in a sum to be proven at trial.

## COUNT III

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

74. Plaintiff repeats and realleges as if fully set forth, the allegations in ¶¶1-73.

75. Jeju is a common carrier, engaged in the business of transporting members of the public to and from Saipan and Korea, it operates, *inter alia,* pursuant to regulations of the FAA and holds itself out as providing services to the general public without discrimination.

11

76. As a common carrier serving Saipan, Jeju is subject to the ACAA, which requires airlines to allow the use of approved POCs by disabled passengers needing oxygen on its flights.

77. Plaintiff Mari, the daughter of Tae, who needed oxygen for a flight from Saipan to Korea, provided Jeju with information showing the approval by the FAA of the Inogen One, as well as Asiana Airlines' application for the use of POCs as proof that passengers were permitted to use POCs on flights under the ACAA. Jeju failed and refused to make any inquiry or investigation regarding FAA approval of POCs that Mari had informed them of.

78. Despite providing all of this information to Jeju, which they should have been aware of, and despite the desperate pleas of a daughter on behalf of her mother, Jeju callously, cruelly, and negligently refused to allow Tae passage with the Inogen One POC on its January 15, 2021 flight from Saipan to Korea.

79. As a common carrier, Jeju has a duty to provide air transportation to the general public without discrimination, and under the circumstances of this case, had a special relationship with Mari by virtue of the fact that it was a common carrier and the only airline providing service from Saipan to Korea.

80. Having undertaken the duty to supply air passage from Saipan to Korea to the public without discrimination, Jeju was charged with handling the request for passage of a critically ill person with a disability without negligence, and Jeju's negligent refusal to provide passage posed a significant risk of serious emotional harm to the passenger and to her daughter who made Jeju aware of her mother's critical condition and how desperate she was to get her mother the required medical treatment in Korea.

81. Jeju negligently performed a duty that it had undertaken, that is providing transport on its plane without discrimination and this negligence caused severe emotional harm to Mari, who was dealing with Jeju in attempting to make the reservation for her mother.

82. As the provider of air passage and the only carrier flying the Saipan-Korea route, Jeju was in a position of power over Tae and Mari, who were begging Jeju to allow Tae on their flight with a POC to save her life.

83. Having been informed of Tae's medical condition and the lack of ability to treat the condition in Saipan and mother-daughter relationship, Jeju was on notice of the emotional harm that a negligent and erroneous decision to refuse Tae passage on their flight would cause.

84. The negligence of Jeju described herein was the proximate cause of the serious physical and emotional harm suffered by Mari.

85. Because of the reckless, willful, wanton and malicious nature of Jeju's conduct, Plaintiff is entitled to punitive damages in a sum to be proven at trial.

**PRAYER**

WHEREFORE, Plaintiff prays for the following relief:

1. Compensatory damages according to proof.

2. Punitive damages according to proof.

3. For such other relief as the Court deems appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury.

DATED this 17th day of May, 2021.

LAW OFFICE OF WILLIAM M. FIZGERALD

/s/ William M. Fitzgerald
William M. Fitzgerald, Esq.
Attorney for Plaintiff Mari Chung Cepeda

E-FILED
CNMI SUPERIOR COURT
E-filed: May 17 2021 01:19PM
Clerk Review: May 17 2021 02:38PM
Filing ID: 66605159
Case Number: 21-0158-CV
Delia Barcinas

## Consumer Information

| Inquirer Type | Name | Address | E-mail Address | Office Phone | Home |
|---|---|---|---|---|---|
| RR | MRS MARI CEPEDA | P.O. BOX 504854 SAIPAN MP 96950 | MARICMTLAW@LIVE.COM | 16707897555 | 16707897555 |
| AA | MS TAE HYANG BANG | P.O. BOX 504854 SAIPAN MP 96950 | MARICMTLAW@LIVE.COM | 16707897555 | 16707897555 |

## Complaints Information

| Complaint Code | Carrier Name | Flight Date | Flight Itinerary |
|---|---|---|---|
| MY0799 | JEJU AIR | | Saipan-Northern Mariana Islands (U.S. Territory) to Seoul-South Korea for January 15, 2021 flight |

### Description of Problem/Inquiry

My mother who is disabled was not able to book a flight being notified that she is unable to board with a Portable Oxygen Concentrator (FAA Approved). The airline informed us that anything that carries or makes oxygen is not allowed. She had a doctors certification stating she is capable of flying as long as she has an Portable oxygen concentrator with her. The staff of Jeju Air told us after contacting their Headquarters in Korea that she is unable to travel with a POC. Would you please help assist us in this matter. We are abiding to US Jurisdictions and although this airline is a foreign airline, they still do need to comply with the US FAA policy isn't it? They mentioned that their aircraft is small and is not equipped to handle MEDA cases, stretchers, etc. My mom is totally capable of handling herself as long as she has her POC with her and I believe their response is discriminatory. What can we do to file a complaint? We await your response. Thank you. We were wanting to book Jeju Air flying out from Saipan-Northern Mariana Islands (U.S. Territory) to Seoul-South Korea for January 15, 2021 flight. They couldn't entertain us as soon as they knew my mom needed to fly with a POC even after knowing the device was FAA approved. We had no other choice but to book a more difficult way from here by taking United Airlines and transiting out of Guam to take Jin Air to Seoul for 2/1/2021. Time is crucial for my mother as she needs to be seek higher medical care from a cardiologist, and Saipan does not have one. I do understand that there are limited flights due to Covid-19, but I do have high hope that Office of Aviation Protection can make changes for this airlines regulations. Jeju air is the only airline that is flying out to South Korea currently from Saipan and if things can get better I am hoping my mother can ride this route back returning to Saipan instead of having to layover for days at another location.

# EXHIBIT 1

From: peter.cacioppo@dot.gov
Date: January 27, 2021 at 11:05:51 PM GMT+10
To: maricmtlaw@live.com, maricmtlaw@live.com
Cc: peter.cacioppo@dot.gov
Subject: PC2021010269 - (MARI CEPEDA, TAE HYANG BANG) MY0799


U.S. Department of Transportation
Office of the Secretary of Transportation
GENERAL COUNSEL
1200 New Jersey Ave., S.E.
Washington, DC 20590

Dear Mari,:

This responds to your communication regarding JEJUAIR The U.S. Department of Transportation seeks to ensure that all airline passengers are treated fairly. Complaints from consumers are helpful to us in determining whether airlines are in compliance with the law and to track trends or spot areas of concern that warrant further action.

We will remind the carrier that as they are operating into a US Airport since the rule also applies to territories that they need to abide by the ACAA which requires them to accept FAA approved POCs.

We will forward your complaint to the airline and will ask the company to respond directly to you. Airlines are required to provide a substantive response to the complainant within 60 days.

We have entered your complaint in our computerized industry monitoring system, and it will be counted among the number of complaints filed against this airline in our monthly Air Travel Consumer Report. This report allows consumers and air travel companies to compare the complaint records of individual airlines and tour operators. The data in this report also serve as a basis for rulemaking, legislation and research. Consumer information for air travelers, including the Air Travel Consumer Report and our pamphlet Fly-Rights, a Consumer's Guide to Air Travel, can be found on our website, www.transportation.gov/airconsumer.

Thank you for taking the time to contact us.


Sincerely,

Peter Cacioppo
Office of Aviation Consumer Protection
U.S. Department of Transportation
Office of the General Counsel
Office of the Secretary

**EXHIBIT 2**